Joseph W. Cotchett (SBN 36324)
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Email: jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*Counsel for Plaintiff Guy Saperstein and the Putative Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GUY SAPERSTEIN**, on behalf of himself and all others similarly situated, | Case No. _____ |
| *Plaintiff*, | **CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES FOR** |
| v. | **1. BREACH OF CONTRACT,** |
| **THOMAS P. GOHAGAN & COMPANY**, an Illinois corporation, and | **2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING,** |
| **TRAVEL GUARD AMERICAS LLC**, a Wisconsin corporation, | **3. INTENTIONAL MISRPRESENTATION,** |
| *Defendants*. | **4. BAD FAITH DENIAL OF INSURANCE CLAIM,** |
| | **5. UNJUST ENRICHMENT, and** |
| | **6. VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*** |
| | **DEMAND FOR JURY TRIAL** |

**CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION..................................................................................................1

II.  NATURE OF THE ACTION.................................................................................2

    A.   Gohagan's Failure to Provide Refunds ........................................................2

    B.   Travel Guard's Denial of Claims for Trip Cancellation Benefits...........................3

III. PARTIES ...........................................................................................................4

    A.   Plaintiff ..................................................................................................4

    B.   Defendants ..............................................................................................4

IV.  AGENTS AND CO-CONSPIRATORS ................................................................5

V.   JURISDICTION AND VENUE ...........................................................................5

VI.  FACTUAL ALLEGATIONS ...............................................................................6

    A.   Virus Pandemic .......................................................................................6

    B.   Quarantine Order .....................................................................................6

    C.   Gohagan's Breach of Contract ...................................................................7

    D.   Travel Guard's Breach of Contract .............................................................8

VII. CLASS ALLEGATIONS ...................................................................................11

VIII. CAUSES OF ACTION AND CLAIMS FOR RELIEF ..........................................15

    FIRST CAUSE OF ACTION

    (Breach of Contract Against All Defendants)...................................................15

    SECOND CAUSE OF ACTION

    (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants) 16

    THIRD CAUSE OF ACTION

    (Intentional Misrepresentation Against All Defendants)...................................17

    FOURTH CAUSE OF ACTION

    (Bad Faith Denial of Insurance Claim Against Travel Guard) ..........................18

    FIFTH CAUSE OF ACTION

    (Violations of Cal. Bus. & Prof. Code §§ 17200, *et. seq.*, Against All Defendants)........19

    SIXTH CAUSE OF ACTION

    (Unjust Enrichment Against All Defendants).................................................21

IX.  PRAYER FOR RELIEF.....................................................................................21

DEMAND FOR JURY TRIAL.....................................................................................22

Guy Saperstein ("Plaintiff"), by and through his attorneys, bring this action on behalf of himself and all others similarly situated against Thomas P. Gohagan & Company ("Gohagan") and Travel Guard Americas LLC ("Travel Guard") (collectively, "Defendants"). Plaintiff hereby alleges, on information and belief, except as to those allegations which pertain to the named Plaintiff, as follows:

## I.    INTRODUCTION

1.    Like many other alumni of the University of California, Berkeley ("Cal") who book travel through Cal Discoveries Travel, part of the Cal Alumni Association (*see below* screenshot of Cal Alumni Association website), Plaintiff Guy Saperstein and his wife, Jeanine Saperstein, purchased a deluxe travel program from Gohagan that Gohagan canceled as a result of the COVID-19 pandemic. Gohagan is one of a dozen specialized wholesale tour operators that participate in Cal Discoveries Travel. The Sapersteins also purchased travel insurance from Travel Guard in connection with the travel program and filed a claim for benefits with Travel Guard after Gohagan's cancellation. Travel Guard is a travel insurance provider operating under the American International Group. Inc., also known as AIG, umbrella. This Complaint arises from Gohagan's failure to provide a refund to its reservation holders, including the Sapersteins, as well as from Travel Guard's denial of benefits to its insurance policyholders, including the Sapersteins.



*Source:* https://alumni.berkeley.edu/

1  **II.    NATURE OF THE ACTION**

2    **A.    Gohagan's Failure to Provide Refunds**



EUROPEAN COASTAL CIVILIZATIONS

2.    In August 2019, the Sapersteins made a reservation for the European Coastal Civilizations: A Voyage from Lisbon to London ("Cruise") scheduled from April 27, 2020 to May 6, 2020 (*see above*) and paid a total of $29,480 to Gohagan. The  Cruise on the exclusively chartered, five star, small ship Le Dumont d'Urville would sail from Lisbon to Oporto, to Santiago de Compostela, to Bilbao, to Brittany, to Normandy, to the River Thames, and finally to London (*see right*), and visit three UNESCO World Heritage sites, including Mont-St-Michel, Santiago de Compostela, and Oporto, along the way. Special



guest speaker David Eisenhower, grandson of General and President Dwight D. Eisenhower, Supreme Commander of the Allied Forces during World War II, would share distinctive insights and accompany passengers to the Normandy beaches (*see left*).

3.    In March 2020, in light of the COVID-19 outbreak, Gohagan notified the Sapersteins that it had canceled the Cruise and offered the following alternatives:

(1) transfer the reservation and money paid to another European Coastal Civilizations travel program in 2021 or 2022, or (2) receive travel certificates valid on other Gohagan travel programs operating through 2022. Gohagan confirmed that it was denying a refund of the money paid by the Sapersteins. Gohagan's denial breached the contract between Gohagan and the Sapersteins.

4.     In addition to the Sapersteins, other individuals made reservations with, and paid money to, Gohagan for this Cruise before its cancellation ("Gohagan Class" or "Gohagan Class Members"). Gohagan notified the Gohagan Class that it had canceled the Cruise due to the COVID-19 pandemic and various national, state, and local travel restrictions and orders. Gohagan denied refunds of the money paid by Gohagan Class Members in breach of the contracts between Gohagan and Gohagan Class Members.

5.     As stated above, the Sapersteins made a reservation for the Cruise through Cal Discoveries Travel of the Cal Alumni Association. Cal Discoveries Travel provides the Cal alumni community with educationally oriented travel through Gohagan. Upon information and belief, many Gohagan Class Members are Cal alumni.

**B.     Travel Guard's Denial of Claims for Trip Cancellation Benefits**

6.     On or around August 26, 2019, the Sapersteins also purchased travel insurance in connection with the Cruise ("Insurance Policy") pursuant to Gohagan's strong recommendation and paid a total of $3,079 to Travel Guard. After Gohagan canceled the Cruise, the Sapersteins filed a claim for trip cancellation benefits with Travel Guard. Travel Guard notified the Sapersteins that it was denying such benefits to them because COVID-19 is allegedly a foreseen event and coverage does not apply. This denial breached the contract between Travel Guard and the Sapersteins.

7.     In addition to the Sapersteins, other individuals purchased travel insurance for this Cruise from Travel Guard ("Travel Guard Class" or "Travel Guard Class Members"). Upon information and belief, Travel Guard notified Travel Guard Class Members that it is denying claims for benefits in connection with the trip cancellation resulting from COVID-19 pandemic because it is allegedly is a foreseen event and coverage does not apply. This denial is a breach of

the contracts between Travel Guard and Travel Guard Class Members.

8.     Not all Gohagan Class Members purchased travel insurance for the Cruise from Travel Guard. This Complaint only relates to Gohagan Class Members who purchased travel insurance for the Cruise from Travel Guard.

## III.    PARTIES

### A.    <u>Plaintiff</u>

9.     Plaintiff **Guy Saperstein** resides in Piedmont, California. On or around August 16, 2019, he and his wife, Jeanine Saperstein, made a reservation for the Cruise scheduled from April 27, 2020 to May 6, 2020 and paid a deposit of $2,000 to Gohagan. Gohagan confirmed their reservation on August 19, 2019. On our around December 18, 2019, the Sapersteins received an invoice for and paid the remaining balance of $27,480 to Gohagan. In total, the Sapersteins paid Gohagan $29,480.

10.     In accordance with Gohagan's strong recommendation, and in connection with the aforementioned Cruise, on or around August 26, 2019, the Sapersteins purchased the Insurance Policy. The Sapersteins paid $3,079 for the Insurance Policy from Travel Guard, which became effective on August 27, 2019.

### B.    <u>Defendants</u>

11.     Defendant **Thomas P. Gohagan & Company**, doing business as Gohagan & Company and Gohagan Travel, is an Illinois corporation with its principal place of business at 209 South Lasalle Street, Suite 500, Chicago, Illinois 60604. Gohagan transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Gohagan has marketed, advertised, and sold deluxe group travel programs to consumers throughout the United States.

12.     Gohagan sold the Cruise to the Sapersteins and Gohagan Class Members. Gohagan canceled the Cruise on or around March 23, 2020 and subsequently denied a refund of money paid by the Sapersteins and Gohagan Class Members in breach of its contracts with them.

13.     Defendant **Travel Guard Americas LLC**, doing business as AIG Travel Guard or Travel Guard, is a Wisconsin corporation with its principal place of business at 3000 Business

Park Drive, Stevens Point, Wisconsin 54482. Travel Guard transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Gohagan has marketed, advertised, and sold travel insurance to consumers throughout the United States.

14.    Travel Guard sold travel insurance policies to the Sapersteins and Travel Guard Class Members. Despite Gohagan canceling the Cruise due to the COVID-19 pandemic and resulting travel restrictions and orders at various levels of government triggering trip cancellation benefits, Travel Guard has denied the claims by the Sapersteins and Travel Guard Class Members in breach of its contracts with them.

## IV.    AGENTS AND CO-CONSPIRATORS

15.    Defendants acted as the principals of or agents for the unnamed co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

16.    Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the offenses alleged.

17.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## V.    JURISDICTION AND VENUE

18.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) as to the named Plaintiff and every member of the Classes because the Classes contain more than 100 members, the aggregate amount in controversy exceeds $5 million, and members of the Classes reside across the United States and are therefore diverse from Defendants. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.    This Court has personal jurisdiction over Defendants because they have significant minimum contacts with California, and/or they otherwise intentionally availed themselves of the laws and markets of California through marketing, advertising, and sales in California and through mail and the Internet to consumers in California. The claims asserted herein arise from Defendants' contacts with California. This Court's exercise of jurisdiction over Defendants is permissible under traditional notions of fair play and substantial justice.

20.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Additionally, Gohagan Class Members, many of whom are Cal alumni and purchased the Cruise through Cal Discoveries Travel, including the Sapersteins, reside this this District. As a result of the COVID-19 pandemic and current shelter-in-place orders in effect in California, Gohagan Class Members must remain in the Northern District of California because travel is untenable for them. Some of the relevant witnesses are also located in this District, including various employees of Cal Discoveries Travel who work with Gohagan.

## VI.    FACTUAL ALLEGATIONS

### A.    Virus Pandemic

21.    In December 2019, a new strain of Coronavirus known as COVID-19 or SARS-CoV-2 was first observed in humans in China. The virus quickly spread through China and Asia and has caused a global pandemic. Infection with COVID-19 is associated with symptoms such as fever, a dry cough, shortness of breath, infection, pneumonia, and can be fatal.

22.    As of May 7, 2020, there have been over 1.26 million cases and over 74,000 deaths in the United States because of COVID-19. Additionally, there have been over 54,000 cases and 2,200 deaths in California due to COVID-19.

### B.    Quarantine Order

23.    On March 19, 2020, the State of California issued an Order of the State Public Health Officer, which directed all individuals living in the State of California to stay home or at their place of residence, except as needed to maintain continuity of operation of the federal critical infrastructure sectors.

24.    On that same date, California Governor Gavin Newsom issued Executive Order N-33-20, expressly requiring California residents to follow the March 19 Order of the State Public Health Officer, and incorporating by reference California Government Code 8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment" (Cal. Gov. Code § 8665).

25.    The March 19 Order of the State Public Health Officer and Executive Order N-33-20 took immediate effect on March 19, 2020, and both have remained continuously in effect through the date of this Complaint.

### C.    Gohagan's Breach of Contract

26.    Gohagan is a travel services provider that was founded more than 30 years ago. It focuses on "small group deluxe travel" and "develop[s] and operate[s] deluxe group travel programs for America's most prestigious museums, colleges, universities and cultural institutions."[1] It offers travel itineraries with educational components "paired with the style and comfort of the world's finest ocean-going cruise vessels and deluxe river ships, trains and hotels, and are enhanced by world-class guides and academic experts."[2]

27.    Upon information and belief, Gohagan began marketing, advertising, and selling the Cruise up to 24 months before its departure date. The Sapersteins made a reservation for the Cruise through Cal Discoveries Travel of the Cal Alumni Association and paid Gohagan. Other Gohagan Class Members made a reservation for the Cruise through Cal Discoveries Travel or their own colleges, universities, museums, or cultural institutions and paid Gohagan.

28.    In or around March 23, 2020, Gohagan canceled the Cruise due to the COVID-19 pandemic and various national, state, and local travel restrictions and orders. Gohagan notified Cruise reservation holders of this cancellation.

---

[1] http://www.gohagantravel.com/AboutUsPage.html

[2] *Id.*

29. The contracts between Gohagan and Cruise reservation holders, including the Sapersteins, expressly provide, in relevant part, "*Gohagan may cancel a trip (or an option) for any reason whatsoever; if so, its sole responsibility is to refund monies paid by the participant to it*" (emphasis added) (*see below*):

> to detract from the enjoyment of the program by others. Specific room/cabin assignments are within the sole discretion of the hotel or cruise line.
>
> Gohagan reserves the right to change the itinerary or program features at any time and for any reason, with or without notice, and Gohagan shall not be liable for any loss of any kind as a result of any such changes. Ship schedules, port calls, hours of arrival and departure, sightseeing events, special programs and guest lecture series (if applicable), are subject to change or cancellation. Gohagan reserves the right to substitute motorcoach transportation using hotels, inns or lodges for cruise accommodations if necessary due to weather, water conditions or levels, other events of force majeure, mechanical or other conditions beyond the control of Gohagan. Gohagan is not responsible therefor and is not required to compensate passengers under these circumstances.
>
> Gohagan may cancel a program (or an option) for any reason whatsoever; if so, its sole responsibility is to refund monies paid by the participant to it. Gohagan, however, is not required under these circumstances to refund the cost of any purchased travel insurance. Gohagan is not required to cancel any program for any reason including without limitation, United States Department of State, World Health Organization or other Warnings or Advisories of any kind. Gohagan is not responsible for penalties assessed by air carriers resulting from operational and/or itinerary changes, even if Gohagan makes the flight arrangements or cancels the program. Gohagan reserves the right to substitute vessels, hotels or attractions of a similar category for those listed in this brochure.

30. Instead of providing refunds Gohagan Class Members pursuant to the plain language of the contract, however, Gohagan provided the following alternatives: (1) transfer their reservation and monies paid to the same travel program in 2021 or 2022, or (2) receive travel certificates valid on other Gohagan travel programs operating through 2022. The Sapersteins requested a money refund, but Gohagan's senior passenger services coordinator, Peggy Shulte, confirmed that "[t]here is no offer of a refund[.]" The Sapersteins and Gohagan Class Members therefore had to choose one of the two options or forfeit the money that they paid to Gohagan. Gohagan breached its contracts with the Sapersteins and Gohagan Class Members in denying them a refund of money paid.

**D.    Travel Guard's Breach of Contract**

31. Travel Guard is a travel insurance provider and was founded nearly 40 years ago. It offers travel insurance, assistance, and emergency travel service plans. Travel Guard claims to be "America's leading provider of travel insurance plans and assistance programs" and to provide

"valuable coverage that travels with you and your family."[3] Indeed, it maintains, "When you travel, things happen. They just do. But we're here, ready to be a fantastic travel companion day or night, rain or shine."[4]

32.     Travel Guard has marketed, advertised, and sold travel insurance at all relevant times to the Complaint. Travel Guard offers three levels of travel insurance plans: Platinum, Gold, or Silver (or, in some states, Deluxe, Preferred, and Essential). Many travel services providers, including Gohagan, strongly recommend their reservation holders purchase travel insurance. After making a reservation for the Cruise, the Sapersteins purchased travel insurance for it from Travel Guard. Other Travel Guard Class Members purchased travel insurance for the Cruise from Travel Guard.

33.     Beginning in March 2020, many travel service providers, including airlines, trains, and cruise ships, canceled various trips due to the COVID-19 pandemic and travel restrictions and orders at various levels of government, including Gohagan. The Sapersteins and other insurance policyholders filed claims with Travel Guard for benefits in connection with the cancellation of the Cruise.

34.     The contracts between Travel Guard and insurance policyholders, including the Sapersteins, explicitly state:

> "[Travel Guard] will reimburse the Insured a benefit, up to the Maximum Limit shown in the Schedule or Declarations Page if an Insured cancels his/her Trip or is unable to continue on his/her Trip due to any of the following ***Unforeseen*** events: . . .
>
>      (f) the Insured or Traveling Companion is hijacked, ***quarantined***, subpoenaed or required to serve on a jury; . . .
>
> Trip Cancellation Benefits: The Company will reimburse the Insured for Forfeited, prepaid Trip Cost up to the Maximum Limit shown in the Schedule or Declarations Page for Trips that are canceled prior to the scheduled departure due to any of the Unforeseen events shown above."

(emphasis added).

35.     The text of the relevant section in Travel Guard's insurance policies read:

---

[3] https://www.travelguard.com/why-buy

[4] *Id.*

(b) 7 days after the date the Trip was scheduled to be completed.

**Baggage Extension of Coverage:** If an Insured's Baggage, passports and visas are in the charge of a Common Carrier and delivery is delayed, coverage for Baggage and Personal Effects will be extended until the Common Carrier delivers the property to the Insured. This Extension does not include loss caused by the delay.

### Section II - Benefits
**TRIP CANCELLATION AND INTERRUPTION**

The Company will reimburse the Insured a benefit, up to the Maximum Limit shown in the Schedule or Declarations Page if an Insured cancels his/her Trip or is unable to continue on his/her Trip due to any of the following Unforeseen events:

(a) Sickness, Injury or death of an Insured, Family Member, Traveling Companion or Business Partner;

  (1) Sickness or Injury of an Insured, Traveling Companion or Family Member traveling with the Insured must be so disabling as to reasonably cause a Trip to be canceled or interrupted or which results in medically imposed restrictions as certified by a Physician at the time of Loss preventing your continued participation in the Trip;

  (2) Sickness or Injury of a Family Member not traveling with the Insured must be because their condition is life-threatening as certified by a Physician, or they require the Insured's immediate care. Such disability must be so disabling as to reasonably cause a Trip to be canceled or interrupted and must be certified by a Physician;

  (3) Sickness or Injury of the Business Partner must be so disabling as to reasonably cause the Insured to cancel or interrupt the Trip to assume daily management of the business. Such disability must be certified by a Physician;

(b) Inclement Weather causing delay or cancellation of travel for at least 24 consecutive hours;

(c) Strike causing complete cessation of travel services at the point of departure or Destination;

(d) the Insured's Primary Residence being made Uninhabitable or Inaccessible by Natural Disaster, vandalism or burglary;

(e) the Insured's Destination being made Uninhabitable or Inaccessible by flood, tornado, earthquake, volcanic eruption, fire, wildfire or blizzard that is due to natural causes;

(f) the Insured or Traveling Companion is hijacked, quarantined, subpoenaed or required to serve on a jury;

(g) the Insured or Traveling Companion is called to active military service or military leave is revoked or reassigned;

(h) a Terrorist Incident in a City listed on the Insured's itinerary within 30 days of the Insured's scheduled arrival;

(i) the Insured or Traveling Companion is involuntarily terminated or laid off through no fault of his or her own provided that he or she has been an active employee for the same employer for at least 1 year. Termination must occur following the effective date of coverage. This provision is not applicable to temporary employment, seasonal employment, independent contractors or self-employed persons;

(j) a named hurricane causing cancellation or interruption of travel to the Insured's Destination that is Inaccessible or Uninhabitable. Claims are not payable if a hurricane is foreseeable prior to the Insured's effective date. A hurricane is foreseeable on the date it becomes a named storm. The Company will only pay the benefits for Losses occurring within 30 days after the named hurricane makes the Insured's Destination Uninhabitable or Inaccessible.

**SPECIAL NOTIFICATION OF CLAIM**

The Insured must notify Travel Guard as soon as reasonably possible in the event of a Trip Cancellation or Interruption claim. If the Insured is unable to provide cancellation notice within the required timeframe, the Insured must provide proof of the circumstance that prevented timely notification.

**Trip Cancellation Benefits:** The Company will reimburse the Insured for Forfeited, prepaid Trip Cost up to the Maximum Limit shown in the Schedule or Declarations Page for Trips that are canceled prior to the scheduled Departure due to any of the Unforeseen events shown above.

**Trip Interruption Benefits:** The Company will reimburse the Insured up to the Maximum Limit shown in the Schedule or Declarations Page for Trips that are interrupted due to the Unforeseen events shown above for:
(a) Unused portion of nonrefundable, prepaid insured Trip Cost, and
(b) additional transportation expenses incurred by the Insured, either

36.     Travel Guard failed to define "quarantined" anywhere in the insurance policies provided to insurance policyholders, including the Sapersteins.

37.     According to the Oxford Dictionary, "quarantined" is the past participle of the verb "quarantine," which means to "impose isolation on (a person, animal, or place); put in quarantine." The Merriam-Webster Dictionary similarly defines "quarantined" as "to detain in or exclude by quarantine" or "to isolate from normal relations or communication[.]"

38.     The Sapersteins were quarantined in their home in Piedmont, a city in the County of Alameda, given that the County of Alameda issued a shelter-in-place order effective March 16, 2020 and the Governor of California issued a statewide shelter-in-place order on March 19, 2020,

both of which extend through the dates of the Cruise—April 27, 2020 to May 6, 2020. The shelter-in-place orders therefore act as *de facto* quarantine orders. Indeed, everyone except essential service workers have been quarantined in their home due to the various national, state, and local travel restrictions and orders. Despite that Travel Guard agreed to pay trip cancellation benefits to claimants resulting from being "quarantined[,]" it has denied benefits to the Sapersteins and Travel Guard Class Members for that exact reason. Travel Guard breached its contracts with the Sapersteins and Travel Guard Class Members in denying them benefits in connection with the cancellation of the Cruise, which resulted from the COVID-19 pandemic and quarantine.

39.    Furthermore, the quarantine meets the definition of an "unforeseen" event under the contract because the COVID-19 pandemic was neither anticipated nor expected before March 11, 2020 when the World Health Organization declared COVID-19 a pandemic. Additionally, even if the pandemic was anticipated or expected, the resulting quarantine was not because the travel restrictions and orders at various levels of government are unprecedented actions and therefore unanticipated and unexpected. Travel Guard breached its contracts with the Sapersteins and other Travel Guard Class Members in denying them benefits in connection with the Cruise cancellation resulting from these unforeseen and unprecedented pandemic and quarantine.

40.    On information and belief, Travel Guard denied claims by the Sapersteins and the Travel Guard Class in bad faith as part of a policy to limit its losses during the COVID-19 pandemic, notwithstanding that the insurance policies provide coverage for trip cancellations resulting from being quarantined and other unforeseen events.

## VII.    CLASS ALLEGATIONS

41.    Plaintiff brings this class action on behalf of himself individually and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3).

**Nationwide Gohagan Class:** The nationwide Gohagan Class consists of all persons who purchased the Cruise from Gohagan in the United States that Gohagan canceled and for which Gohagan failed to provide a refund of money paid. Excluded from the Gohagan Class are Defendants, their affiliates, employees, officers, and directors, persons, and entities. Plaintiff reserves the right to amend the Gohagan Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

**Nationwide Travel Guard Class:** The nationwide Travel Guard Class consists of all persons who purchased travel insurance from Travel Guard in the United States in connection with the Cruise that Gohagan canceled and for which Travel Guard denied trip cancellation benefits. Excluded from the Travel Guard Class are Defendants, their affiliates, employees, officers, and directors, persons, and entities. Plaintiff reserves the right to amend the Travel Guard Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

42.    This action is properly brought as a class action under Federal Rule of Civil Procedure 23(a) for the following reasons:

(a)    **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The proposed Gohagan and Travel Guard Classes are so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable. While Plaintiff does not know the exact number and identity of the Gohagan and Travel Guard Classes, Plaintiff is informed and believe that there are over 100 class members in each class. The precise number of class members may be ascertained through discovery;

(b)    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)):** There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members. Such common questions of law and fact include, but are not limited to:

i.    Whether Gohagan breached its contract with Gohagan Class Members,

ii.    Whether Gohagan intentionally misrepresented the terms of refund to Gohagan Class Members,

iii.    Whether Travel Guard breached its contract with Travel Guard Class Members,

iv.    Whether Travel Guard intentionally misrepresented the terms of trip cancellation benefits to Travel Guard Class Members,

v.    Whether Travel Guard acted in bad faith in denying trip cancellation benefits to Travel Guard Class Members,

vi.     Whether Defendants unjustly received funds from Plaintiff and the Gohagan Class and Travel Guard Class;

vii.    Whether Defendants violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;

viii.   Whether Plaintiff and the Classes have been harmed and the proper measure of relief;

ix.     Whether Plaintiff and the Classes are entitled to an award of punitive damages, attorneys' fees and expenses against Defendants; and

x.      Whether, because of Defendants' misconduct, Plaintiff and the Classes are entitled to equitable relief, and if so, the nature of such relief.

(c)     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the Gohagan Class and Travel Guard Class. Plaintiff and the Classes have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of the Classes and are based on the same legal theories;

(d)     **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Classes in that they have no interests antagonistic to those of the other members of the Classes, and Plaintiff have retained attorneys experienced in consumer class actions and complex litigation as counsel;

43.     This action is properly brought as a class action under Federal Rule of Civil Procedure 23(b) for the following reasons:

(a)     **Class Action Status (Fed. R. Civ. P. 23(b)(1)):** Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions

by the members of the Classes would create a risk of adjudications with respect to individual members of the Classes that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

(b)     **Declaratory and Injunctive Relief (Fed. R. C. P. 23(b)(2)):** Certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole.

(c)     **Superiority (Fed. R. Civ. P. 23(b)(3)):** Certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Classes predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

(d)     The proposed Classes are ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same fashion;

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)     Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(b)     This action will promote an orderly and expeditious administration and adjudication of the proposed Classes' claims, economies of time, effort and

resources will be fostered and uniformity of decisions will be insured;

    (c)    Without a class action, Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct; and

    (d)    Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

45.    Defendants have, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the pendency of this class action.

46.    Plaintiff seeks damages and equitable relief on behalf of the Classes on grounds generally applicable to the entire proposed Classes.

47.    **Application of California Law:** California law should be applied to the nationwide class because Defendants have violated various California consumer protection laws and a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Many Gohagan and Travel Guard Class Members also reside in California, rendering application of California law appropriate. Furthermore, California has an interest in not only protecting its own consumers but in punishing businesses like Defendants that market, advertise, and sell travel services and insurance to its own consumers.

## VIII.  CAUSES OF ACTION AND CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**(Breach of Contract Against All Defendants)**

48.    Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

49.    Plaintiff and the Gohagan Class entered into contracts with, and paid money to, Gohagan for the Cruise.

50.    Gohagan canceled the Cruise as a result of the COVID-19 pandemic and failed to "refund monies paid by the participant" pursuant to the contract between Gohagan and Gohagan Class Members.

51.     Plaintiff and the Gohagan Class were harmed because Gohagan did not provide them with a refund of the money that they paid. Instead, Gohagan only provided them the option of transferring their reservation and monies paid to the same travel program in 2021 or 2022, or receiving travel certificates valid on other Gohagan travel programs operating through 2022.

52.     Gohagan's breach of contract was the sole factor in causing harm to Plaintiff and the Gohagan Class.

53.     Similarly, Plaintiff and the Travel Guard Class entered into contracts with, and paid money to, Travel Guard for travel insurance in connection with the Cruise.

54.     When Gohagan canceled the Cruise because of the COVID-19 pandemic and various national, state, and local travel restrictions and orders, Plaintiff and the Travel Guard Class filed claims with Travel Guard for trip cancellation benefits.

55.     Travel Guard denied these claims despite that it agreed to pay trip cancellation benefits to claimants resulting from being "quarantined[,]" which is an "unforeseen" event pursuant to the insurance policies.

56.      Plaintiff and the Travel Guard Class were harmed because Travel Guard denied the trip cancellation benefits.

57.     Travel Guard's breach of contract was a substantial factor in causing harm to Plaintiff and the Travel Guard Class.

### SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

58.     Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

59.     Plaintiff and the Gohagan Class entered into contracts with, and paid money to, Gohagan for the Cruise.

60.     Gohagan canceled the Cruise because of COVID-19 pandemic and failed to "refund monies paid by the participant" pursuant to the contract between Gohagan and Gohagan Class Members. By doing so, Gohagan did not act fairly and in good faith.

61.      Plaintiff and the Gohagan Class were harmed by Gohagan's failure to provide a

refund of money paid.

62.    Similarly, Plaintiff and the Travel Guard Class entered into contracts with, and paid money to, Travel Guard for travel insurance in connection with the Cruise.

63.    When Gohagan canceled the Cruise because of the COVID-19 pandemic and various national, state, and local travel restrictions and orders, Plaintiff and the Travel Guard Class filed claims with Travel Guard for trip cancellation benefits.

64.    Travel Guard denied these claims despite that it agreed to pay trip cancellation benefits to claimants resulting from being "quarantined[,]" which is an "unforeseen" event pursuant to the insurance policies. By doing so, Travel Guard did not act fairly and in good faith.

65.    Plaintiff and the Travel Guard Class were harmed by Travel Guard's denial of trip cancellation benefits.

### THIRD CAUSE OF ACTION
**(Intentional Misrepresentation Against All Defendants)**

66.    Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

67.    Gohagan represented to Plaintiff and the Gohagan Class, "Gohagan may cancel a trip (or an option) for any reason whatsoever; if so, its sole responsibility is to refund monies paid by the participant to it."

68.    This representation was false because Gohagan canceled the Cruise and failed to provide a refund of money paid by Plaintiff and the Gohagan Class.

69.    Gohagan knew that the representation was false when it made representation because Gohagan had no intention of refunding money paid to it under any circumstances.

70.    Gohagan intended Plaintiff and the Gohagan Class to rely on the representation, which they did.

71.    Plaintiff and the Gohagan Class were harmed because Gohagan did not provide them with a refund of the money that they paid.

72.    Plaintiff and the Gohagan Class' reliance on Gohagan's representation was a substantial factor in causing them harm.

73.    Similarly, Travel Guard represented to Plaintiff and the Travel Guard Class,

""[Travel Guard] will reimburse the Insured a benefit, up to the Maximum Limit shown in the Schedule or Declarations Page if an Insured cancels his/her Trip or is unable to continue on his/her Trip due to any of the following Unforeseen events: . . . (f) the Insured or Traveling Companion is hijacked, quarantined[.]"

74.     This representation was false because Travel Guard denied claims for benefits to Plaintiff and the Gohagan Class in connection with the cancellation of the Cruise resulting from the COVID-19 pandemic and quarantine order.

75.     Travel Guard made the representation recklessly and without regard for its truth because, upon information and belief, Travel Guard's established company policy is to assert coverage defenses that are legally and/or factually invalid and thereby delay resolution of claims.

76.     Travel Guard intended Plaintiff and the Travel Guard Class to rely on the representation, which they did.

77.     Plaintiff and the Travel Guard Class were harmed because Travel Guard denied the trip cancellation benefits.

**FOURTH CAUSE OF ACTION**
**(Bad Faith Denial of Insurance Claim Against Travel Guard)**

78.     Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

79.     Travel Guard has put their own interest above those of Plaintiff and the Travel Guard Class and has, in bad faith, failed or refused to perform their obligations under the insurance policies.

80.     Defendants denied Plaintiff and the Travel Guard Class' claims in bad faith by, among other conduct, (a) failing or refusing to perform a fair, objective, and thorough investigation of the claims as required by the California Insurance Code; (b) asserting coverage defenses that were legally and/or factually invalid and thereby delaying resolution of Plaintiff and the Class' claims; (c) placing unduly restrictive interpretations on the policy terms for the purpose of denying coverage due under the policy; (d) failing to give Plaintiff and the Class' interests equal consideration with its own; and (e) forcing Plaintiff and the Class to institute litigation to recover amounts due under the policy.

81.     Based on the above, Plaintiff and the Travel Guard Class allege that Travel Guard has committed institutional bad faith that is part of a repeated pattern of unfair practices and not an isolated occurrence. The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in Travel Guard's established company policy.

82.     As a proximate result of the aforementioned bad faith conduct by Travel Guard, Plaintiff and the Travel Guard Class have suffered and will continue to suffer damages. These damages include interest on the withheld and unreasonably delayed payments due under the policies and other special economic and consequential damages, of a total amount to be shown at trial.

83.     As a further proximate result of Travel Guard's bad faith conduct, Plaintiff was compelled to retain legal counsel to obtain the benefits due under his Insurance Policy. Travel Guard is therefore liable to Plaintiff for those attorneys' fees, witness fees, and costs of litigation reasonably necessary and incurred by Plaintiff to obtain the benefits of the Policy.

84.     Travel Guard carried out its bad faith conduct with a willful and conscious disregard of Plaintiff's rights or subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights. Alternatively, Travel Guard's conduct constituted an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention of depriving Plaintiff of legal rights, or of causing Plaintiff other injury. Travel Guard's conduct constitutes malice, oppression, or fraud under California Civil Code section 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Travel Guard and to deter future similar conduct.

### FIFTH CAUSE OF ACTION
**(Violations of Cal. Bus. & Prof. Code §§ 17200, *et. seq.*, Against All Defendants)**

85.     Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

86.     California's Unfair Competition Law, as codified by California Business & Professions Code sections 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's Unfair Competition

**CLASS ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES**                    19

Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice. Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the scope of California's Unfair Competition Law.

87.    Defendants' acts and practices, as described herein, constitute unlawful or unfair business practices against Plaintiff and the Classes in violation of California Business and Professions Code section 17200, *et seq.*

88.    Concerning Gohagan, these acts include, but are not limited to, promising a refund of money paid to Plaintiff and the Gohagan Class in the event of Gohagan's cancellation of the Cruise. Regarding Travel Guard, these acts include, but are not limited to, charging Plaintiff and the Travel Guard Class premiums in exchange for purported coverage for losses caused by being quarantined without any intention of satisfying those claims in an emergency such as the COVID-19 pandemic and the quarantine orders.

89.    Any claimed justification for Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff and the Classes. Defendants' acts and practices are immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiff and the Classes, and/or tend to deceive Plaintiff and the Classes.

90.    By reason of Defendants' fraudulent, deceptive, unfair, and other wrongful conduct as alleged herein, Defendants violated California Business and Professions Code sections 17200, *et seq.*, by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff and the Classes of the benefits of Defendants' services.

91.    Defendants perpetrated these acts and practices against Plaintiff and the Classes, and as a direct and proximate result of the foregoing, Plaintiff and the Classes have suffered and continue to suffer damages in a sum which is, as of yet, unascertained. Pursuant to California Business and Professions Code section 17203, Plaintiff and the Classes are entitled to restitution of all the money paid to Defendants for retaining benefits that were due and owing to Plaintiff and the Classes (with interest thereon), to disgorgement of all Defendants' profits arising out of their unlawful conduct (with interest thereon), and to be paid benefits due to Plaintiff and the Classes under the contracts that Defendants wrongfully retained by means of its unlawful business

practices.

92.     Pursuant to California Code of Civil Procedure section 1021.5, Plaintiff and the Classes are entitled to recover their reasonable attorney's fees in connection with Defendants' unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment Against All Defendants)**

93.     Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

94.     A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received.

95.     As a result of the conduct describe above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiff and the Classes.

96.     Defendants have received, and are holding, funds belonging to Plaintiff and the Classes which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Classes.

**IX.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Gohagan and Travel Guard Classes, as applicable, respectfully requests that the Court enter judgment in his favor and against Gohagan and Travel Guard, as follows:

1.     That the Court certify this action as a class action, proper and maintainable pursuant to Federal Rule of Civil Procedure 23, declare that Plaintiff is the proper class representatives and appoint Plaintiff's Counsel as Class Counsel;

2.     That the Court grant permanent injunctive relief to prohibit Gohagan from withholding money refunds as a result of cancellations due to the COVID-19 pandemic and prohibit Travel Guard from denying trip cancellation benefits resulting from the COVID-19 quarantine described herein;

3.     That the Court award Plaintiff and the Classes all statutory damages, including, but not limited to, compensatory, consequential, and general damages in an amount to be determined

at trial;

4.     That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

5.     That the Court award Plaintiff and the Classes all costs and expenses of the action, including reasonable attorneys' fees;

6.     That the Court award pre- and post-judgment interest at the maximum legal rate;

7.     That the Court grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

8.     That the Court grant all such other relief as it deems just and proper.


Dated: May 7, 2020                    */s/ Elizabeth T. Castillo*
                                      Joseph W. Cotchett (SBN 36324)
                                      Adam J. Zapala (SBN 245748)
                                      Elizabeth T. Castillo (SBN 280502)
                                      **COTCHETT, PITRE & McCARTHY, LLP**
                                      840 Malcolm Road
                                      Burlingame, CA 94010
                                      Tel: (650) 697-6000
                                      Emails: jcotchett@cpmlegal.com
                                      azapala@cpmlegal.com
                                      ecastillo@cpmlegal.com


                                      *Counsel for Plaintiff Guy Saperstein and the
                                      Putative Classes*


## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all claims so triable.


Dated: May 7, 2020                    */s/ Elizabeth T. Castillo*
                                      Joseph W. Cotchett (SBN 36324)
                                      Adam J. Zapala (SBN 245748)
                                      Elizabeth T. Castillo (SBN 280502)
                                      **COTCHETT, PITRE & McCARTHY, LLP**
                                      840 Malcolm Road
                                      Burlingame, CA 94010
                                      Phone: (650) 697-6000

Email: jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

*Counsel for Plaintiff Guy Saperstein and the*
*Putative Classes*