UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUY SAPERSTEIN,

        Plaintiff,

    v.

THOMAS P. GOHAGAN & COMPANY, et al.,

        Defendants.

Case No.  20-cv-03143-JCS

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 10

## I.    INTRODUCTION

Plaintiff Guy Saperstein brings a putative class action against Defendant Thomas P. Gohagan & Company ("Gohagan"), asserting claims of breach of contract, breach of covenant of good faith and fair dealing, intentional misrepresentation, unjust enrichment, and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.  Saperstein initially named Travel Guard Americas, LLC as a second defendant, but dismissed all claims against that party without prejudice on May 19, 2020.  Defendant Gohagan brings a motion to compel arbitration and dismiss or stay the proceeding based on an arbitration provision in the trip reservation form between Saperstein and Gohagan.  The Court finds that the motion is appropriate for resolution without oral argument, and vacates the hearing and case management conference scheduled for August 7, 2020.  For the reasons discussed below, Gohagan's motion is GRANTED.[1]

## II.    BACKGROUND

### A.    Factual Background and Claims Asserted

In August 2019, Plaintiff Guy Saperstein and his wife, Jeanine Saperstein, purchased a deluxe travel program from Gohagan on Cal Discoveries Travel, a travel booking site for alumni of the University of California, Berkeley.  Compl. (dkt. 1) ¶ 1.  Gohagan is one of a dozen

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

specialized wholesale tour operators that participate in Cal Discoveries Travel.  *Id.*  The

Sapersteins made reservations for the European Coastal Civilizations: A Voyage from Lisbon to

London scheduled from April 27, 2020 to May 6, 2020 (the "Cruise").  *Id.* ¶ 2.  On or around

August 26, 2019, the Sapersteins also purchased travel insurance in connection with the Cruise

and paid a total of $3,079 to Travel Guard.[2]  *Id.* ¶ 6.

In order to register for the Cruise, Plaintiff signed a reservation form and submitted it to

Gohagan's offices.  Saperstein Decl. (dkt. 13-1) ¶ 3.  The reservation form, which was printed

inside a travel brochure for the Cruise, contained the following statement directly above the space

for the participant's payment method and signature: "By reserving and depositing on this program,

I/we agree to the Release of Liability, Assumption of Risk and Binding Arbitration Agreement as

printed on the outside back cover of this brochure."  *Id.* ¶ 3 & Ex. 1 (entire travel brochure,

including reservation form).  The contract on the outside back cover of the brochure stated in

relevant parts:

> **BINDING ARBITRATION:** Any dispute concerning, relating or referring to this
> Agreement, the brochure or any other literature concerning the trip, or the trip
> itself, shall be resolved exclusively by binding arbitration pursuant to the Federal
> Arbitration Act, 9 U.S.C. Sections 1-16, either according to the then existing
> Commercial Rules of the American Arbitration Association (AAA) or pursuant to
> the Comprehensive Arbitration Rules & Procedures of the Judicial Arbitration and
> Mediation Services, Inc. (JAMS). Such proceedings will be governed by
> substantive (but not procedural) Illinois law and will take place in Chicago, IL. The
> arbitrator and not any federal, state, or local court or agency shall have exclusive
> authority to resolve any dispute relating to the interpretation, applicability,
> enforceability, conscionability, or formation of this contract, including but not
> limited to any claim that all or any part of this contract is void or voidable. Please
> understand that by agreeing to these terms and conditions, the participant and
> Gohagan are waiving the right to a trial by jury.
>
> **ACCEPTANCE OF CONTRACT:** By forwarding of deposit, the participant
> certifies that he/she does not have any mental, physical or other condition of
> disability that would create a hazard for him/herself or other participants and
> accepts the terms contained in this Release of Liability, Assumption of Risk and
> Binding Arbitration Agreement.

---

[2] Saperstein filed an insurance claim in connection with the travel insurance he purchased from
Travel Guard, which Travel Guard denied.  Compl. ¶ 14.  Because Saperstein has voluntarily
dismissed Travel Guard from this action, additional information regarding Travel Guard's denial
of Saperstein's insurance claim has been omitted.

United States District Court
Northern District of California

*Id.* Ex. 1 at 10.

The same contract also provides, "Gohagan may cancel a trip (or an option) for any reason whatsoever; if so, its sole responsibility is to refund monies paid by the participant to it." *Id.* (section titled "RESPONSIBILITY").

Saperstein signed the reservation form and paid a deposit of $2,000 on or around August 16, 2019, and Gohagan confirmed the reservation on or around August 19, 2019. *Id.* ¶ 9.  On or around December 18, 2019, the Sapersteins received an invoice for and paid the remaining balance of $27,480 to Gohagan. *Id.*  In total, the Sapersteins paid Gohagan $29,480. *Id.*

In March 2020, Gohagan notified the Sapersteins that it had canceled the Cruise in light of the COVID-19 pandemic. *Id.* ¶ 3.  Gohagan presented the Sapersteins with two options for compensation: (1) transfer the reservation and money paid to another European Coastal Civilizations travel program in 2021 or 2022, or (2) receive travel certificates valid on other Gohagan travel programs operating through 2022. *Id.*  Gohagan denied Saperstein's request for a refund of monies paid to Gohagan for the Cruise. *Id.*

On May 7, 2020 Saperstein brought this action alleging Gohagan breached its contract with Saperstein by denying Saperstein's request to refund the money he paid for the Cruise after Gohagan announced the cancellation. *See generally* Compl.  Saperstein also alleges breach of covenant of good faith and fair dealing, intentional misrepresentation, unjust enrichment, and violations of the Unfair Competition Law against Gohagan in relation to the same set of facts. *See id.*

### B.    The Parties' Arguments

Gohagan argues in its motion that Saperstein is required to arbitrate his claims because he agreed to the arbitration provision of the contract by signing the reservation form and paying a deposit for the Cruise.  Mot. (dkt. 10) at 4–9.  Gohagan also argues that Saperstein's claims fall within the scope of the signed arbitration agreement and that relevant case law supports enforcing this arbitration agreement. *Id.*

Gohagan argues that the arbitration agreement is covered by the Federal Arbitration Act ("FAA"), and thus the Court must compel arbitration if (1) a valid agreement to arbitrate exists,

United States District Court
Northern District of California

and (2) the dispute at issue falls within the scope of that agreement. *Id.* at 5 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  Gohagan contends that the arbitration agreement falls within the scope of the FAA because it involves a transaction in commerce as required by the FAA. *Id.*  Gohagan argues that because the contract involves an international cruise organized by an Illinois corporation that is marketed and sold throughout the country, including to California residents such as Guy Saperstein, the contract involves "commerce among the several states" as required by the FAA. *Id.* at 4–5 (citing Gohagan Decl. (dkt. 10-1) ¶¶ 3, 10–11).

Gohagan argues that the agreement to arbitrate is unambiguous and enforceable. *Id.*  It argues the contract was clear and straightforward because it was only one page long and because the arbitration provision within the contract carried the bolded title "BINDING ARBITRATION." *Id.* at 6 (citing Gohagan Decl. ¶ 6 & Ex. 1 (contract from the back cover of the travel brochure, identical to the copy presented with Saperstein's declaration)).  Additionally Gohagan argues that by paying a deposit on the trip and filling out the reservation form, the Sapersteins agreed to the statement on the reservation form which said "By reserving and depositing on this program, I/we agree to the Release of Liability, Assumption of Risk and Binding Arbitration Agreement as printed on the outside back cover of this brochure." *Id.* (citing Gohagan Decl. ¶ 12 & Ex. 3 (reservation form submitted by Saperstein, identical to the copy presented with Saperstein's declaration)).

Gohagan further argues that Saperstein's claims against it fall within the scope of the arbitration provision in the parties' agreement. *Id.* (citing Gohagan Decl. ¶ 6 & Ex. 1).  Gohagan contends that the agreement provides that in the event "any dispute" arises between Saperstein and Gohagan "concerning, relating or referring to the Agreement, the brochure or any other literature concerning the trip, or the trip itself," the dispute "shall be resolved exclusively by binding arbitration . . . in Chicago, Illinois." *Id.*  Gohagan argues that the present dispute falls within the scope of this broad agreement because Saperstein seeks damages under various theories of liability all predicated on Saperstein's assertion that Gohagan failed to provide refunds as required by the Contract, and thus all concern and relate to the Agreement as stated in the arbitration provision.

1   *Id.*

2       Alternatively, Gohagan argues that questions about the scope or enforceability of the

3   arbitration agreement should be resolved by the arbitrator in accordance with the delegation clause

4   of the arbitration agreement which states, "The arbitrator and not any federal, state, or local court

5   or agency shall have exclusive authority to resolve any dispute relating to the interpretation,

6   applicability, enforceability, conscionability, or formation of this contract, including but not

7   limited to any claim that all or any part of this contract is void or voidable."  Gohagan Decl. Ex. 1;

8   *see* Mot at 7 n.7 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 66, 72 (2010) (enforcing

9   a nearly identical arbitration clause to the one at issue in this case, which provided that "[t]he

10  Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to

11  resolve any dispute relating to the interpretation, applicability, enforceability or formation of this

12  Agreement including, but not limited to any claim that all or any part of this Agreement is void or

13  voidable")).

14      In his opposition, Saperstein concedes that the Court must compel arbitration if (1) a valid

15  agreement to arbitrate exists, and (2) the dispute at issue falls within the scope of that agreement,

16  but argues that there is no such valid agreement to arbitrate because the arbitration provision cited

17  by Gohagan is unconscionable and thus unenforceable under California law.  Opp'n (dkt. 13) at 6.[3]

18      Saperstein suggests the contract is procedurally unconscionable because it contains both

19  the elements of oppression and surprise required to make a showing of procedural

20  unconscionability under California law.  *Id.* at 6–7 (citing *Stirlen v. Supercuts, Inc.*, 51 Cal. App.

21  4th 1519, 1532 (1997)).  Saperstein argues that the contract is oppressive because it is a contract of

22  adhesion, meaning that the plaintiff only had the options to take it or leave it and lacked a

23  meaningful opportunity to negotiate its terms.  *Id.* at 7 (citing Saperstein Decl. Ex. 1 at 10).

24  Saperstein asserts that "'[w]here an adhesive contract is oppressive, surprise need not be shown.'"

25  *Id.* (quoting *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004)).  However,

26

27  _____

28  [3] Saperstein argues that California law should govern the dispute but notes that Illinois law contains nearly identical requirements for a showing of unconscionability and asserts that the arbitration agreement is unconscionable under either state's laws.  Opp'n at 6 n.2.

United States District Court
Northern District of California

he additionally argues that surprise was present because the arbitration provision was "densely-worded, single-spaced, in prolix printed form, and hidden at the back of the brochure." *Id.*

Saperstein argues that the agreement is substantively unconscionable because it grants Gohagan the sole authority to amend the contract, "thereby frustrating any counterparty's ability to consider and negotiate the contract's terms." *Id.* at 10. Additionally, he argues that "the specific arbitration provision language delegating issues of 'interpretation, applicability, enforceability, conscionability, or formation of this contract, including but not limited to any claim that all or any part of this contract is void or voidable[,]' to an arbitrator, is a '[a] delegation clause that lacks mutuality without a reasonable justification' and therefore 'is sufficient to find unconscionability.'" *Id.* (quoting *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (finding unconscionable an arbitration provision in an employment contract mandating arbitration 1,000 miles away from the place of employment and requiring the employee to pay half of all arbitration fees).

Alternatively, Saperstein argues that the arbitration provision is invalid because it prevents his request for public injunctive relief, relying on the California Supreme Court's holding that "'a contractual agreement purporting to waive a party's right to seek public injunctive relief in any forum is unenforceable under California law.'" *Id.* at 12 (quoting *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 822 (9th Cir. 2019) (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) (holding a provision of a credit card agreement waiving the right to seek public injunctive relief in any forum was contrary to California public policy and thus unenforceable under California law))). He contends that because public injunctive relief is an available remedy for the alleged violations of the Unfair Competition Law, enforcement of the arbitration provision prevents this public injunctive relief in violation of the *McGill* rule. *Id.*

In its reply, Gohagan argues that the Supreme Court's decision in *Rent-A-Center* is dispositive of the issue, and that Saperstein's failure to challenge directly the validity of the delegation clause itself ends a court's inquiry, requiring it to enforce the delegation clause in the arbitration agreement. Reply (dkt. 16) at 1–3 (citing *Rent-A-Center,* 561 U.S. at 66).

Gohagan argues in the alternative that Saperstein's argument that the agreement is

unconscionable is meritless. *Id.* at 5.  It asserts that Saperstein has not shown procedural unconscionability because (1) there is no rule that form contracts of adhesion are per se oppressive and (2) Saperstein cannot claim he had no opportunity to negotiate the terms of the agreement when he presents no evidence that he attempted to negotiate the terms of the agreement. *Id.* at 6. Gohagan also asserts there was no surprise because the terms were not hidden in a prolix document, but rather carried a bolded, capitalized title, were presented on a contract of only one page in length, and were referenced directly above Saperstein's signature. *Id.* at 7–8.  Gohagan notes that Saperstein argues the contract as a whole lacks mutuality but fails to suggest the arbitration provision, specifically, is substantively unconscionable. *Id.* at 11 (citing Opp'n at 10). Accordingly, Gohagan asserts, Saperstein fails to show substantive unconscionability. *Id.*

## III.   ANALYSIS

### A.   Legal Standard

Under the FAA, a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Because arbitration is a matter of contract, the question of arbitrability is, in principle, an issue for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, (2002).  The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130.  If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether

United States District Court
Northern District of California

the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.  Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted).  Consequently, courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id.* at 303.  Even where such a presumption arises, arbitration should be ordered only if the presumption is not rebutted.  *Id.* at 301.  Where the presumption applies, courts "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted)).

The Supreme Court in *Granite Rock* explained that the presumption in favor of arbitration "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" 561 U.S. at 299 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The Supreme Court acknowledged that it has "never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' . . .  Nor [has the Court] held that courts may use policy considerations as a substitute for party agreement." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Where the parties "clearly and unmistakably" indicate their intent to do so, an agreement may delegate "threshold issues" of arbitrability, including the "enforceability, revocability or validity" of an arbitration clause, to the arbitrator rather than to a court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (citations omitted).

As a general rule, courts apply state contract law in determining the validity and scope of an arbitration agreement. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Thus, in determining whether there is a valid agreement to arbitrate, "courts must 'apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options*, 514 U.S. at 944).

It is the burden of the party moving to compel arbitration to prove, by a preponderance of the evidence, that a valid arbitration agreement exists. *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1282 (2008). If the moving party carries this burden, the opposing party must prove any defense to arbitration by the same burden. *Id.* ("The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."). "In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." *Id.*; *see also Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996) ("[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable.").

**B.   Gohagan Has Shown that Saperstein Agreed to the Arbitration Provision**

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by the preponderance of the evidence. *Rosenthal,* 14 Cal. 4th at 413. Gohagan asserts—and Saperstein does not deny—that Saperstein signed the reservation form which provided that by signing the reservation form and submitting a deposit to book his reservation, Saperstein agreed to the binding arbitration provision in the contract on the back of the travel brochure. Gohagan Decl. ¶ 12; Saperstein Decl. ¶ 3 & Ex. 1. The arbitration provision within this contract, copied above, clearly provides that any disputes relating to the contract accompanying the reservation form for the Cruise shall be submitted to arbitration in Chicago, Illinois. Saperstein Decl. Ex. 1 ("Any dispute concerning, relating or referring to this Agreement, the brochure or any other literature

United States District Court
Northern District of California

1  concerning the trip, or the trip itself, shall be resolved exclusively by binding arbitration . . .  and

2  will take place in Chicago, IL.").  The provision also clearly states that gateway questions of

3  enforceability and validity of the arbitration agreement itself shall also be submitted to arbitration.

4  *Id.* ("The arbitrator and not any federal, state, or local court or agency shall have exclusive

5  authority to resolve any dispute relating to the interpretation, applicability, enforceability,

6  conscionability, or formation of this contract, including but not limited to any claim that all or any

7  part of this contract is void or voidable.").  Saperstein does not dispute the contents or meaning of

8  the arbitration provision or that his claims fall within the scope of the arbitration provision.  *See*

9  *generally* Opp'n.

10       A defendant's burden of proof to show an agreement to arbitrate is merely the

11  preponderance of the evidence.  *Rosenthal*, 14 Cal. 4th at 413.  "A party required to prove

12  something by a preponderance of the evidence need prove only that it is more likely to be true than

13  not true."  *People ex rel. Brown v. Tri-Union Seafoods, LLC*, 171 Cal. App. 4th 1549, 1567 (2009)

14  (citation and internal quotation marks omitted).  Because Gohagan has presented undisputed

15  evidence that Saperstein signed an agreement which contains both an arbitration provision and

16  delegation clause requiring resolution of the dispute by arbitration, the Court finds that Gohagan

17  has met its burden of showing that Saperstein agreed to the arbitration clause Gohagan seeks to

18  enforce.

19       **C.    The Delegation Clause Is Valid and Enforceable**

20       Saperstein does not argue that he did not sign the arbitration provision or that it does not

21  apply to his claims, but rather that the agreement is unconscionable and thus unenforceable under

22  California law, which Saperstein argues should govern the dispute.  *See generally* Opp'n.  The

23  Court does not reach either the issue of unconscionability or the choice of law issue because it

24  finds that under the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, the

25  delegation provision in the contract is valid and enforceable and requires the parties to resolve

26  gateway issues of arbitrability in arbitration.

27       In *Rent-A-Center*, the Supreme Court held that a provision of an employment agreement

28  which delegated to an arbitrator exclusive authority to resolve any dispute relating to the

10

agreement's enforceability was a valid delegation under the FAA.  561 U.S. at 72.  Respondent Jackson filed an employment discrimination suit against his former employer, Rent-A-Center, in the U.S. District Court for the District of Nevada.  *Id.* at 65.  Rent-A-Center filed a motion under the FAA to dismiss or stay the proceedings and compel arbitration based on the agreement Jackson signed as a condition of his employment.  *Id.*  Jackson opposed the motion on the grounds that the agreement was unenforceable because it was unconscionable under Nevada law.  *Id.* at 66.

The arbitration agreement in Jackson's employment contract contained a delegation clause providing the arbitrator exclusive authority to resolve gateway disputes concerning the enforceability of the agreement, including enforcement of the arbitration provision itself.  *Id.* at 71.  Rent-A-Center moved to enforce the delegation clause, asking the Court to compel arbitration on all claims, including Jackson's claim that the arbitration provision itself was unconscionable and thus unenforceable.  *Id.*

Key to the Court's ruling was its finding that Jackson failed to challenge the validity of the delegation clause, specifically.  *See id.* at 73–74.  Jackson argued, among other things, that the fee-splitting arrangement and discovery limitations called for by the arbitration procedures described by the contract created one-sided results sufficient to demonstrate substantive unconscionability.  *Id.* at 74.  Although these arguments relate to one-sidedness in the method of dispute resolution, the Court found that these arguments challenged the validity of the arbitration agreement as a whole rather than the delegation clause.  *Id.*  Because the Court found that Jackson did not make a sufficient argument as to the substantive unconscionability of the delegation clause, it declined to reach his arguments regarding procedural unconscionability.  *Id.*

The Court found that because Jackson did not challenge the specific delegation clause, but rather only challenged the arbitration provision as a whole, the FAA applied and thus enforced the delegation clause.  *Id.* at 72.  It reasoned that under § 2 of the FAA, which provides that a "written provision" "to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" without mention of the validity of the contract in which it is contained, a court may still enforce an arbitration provision where a party brings challenges to other provisions of the contract.  *Id.* at 70–71.  The Court ruled that application of the principle does not depend on the contents of the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    remaining portions of the contract, and thus an agreement to arbitrate issues of arbitrability may be

2    valid. *Id.* at 72.  Accordingly, it found that "unless Jackson challenged the delegation provision

3    specifically, [the Court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4,

4    leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*

5            Rent-A-Center stands for the rule that under the FAA, where an agreement to arbitrate

6    includes a delegation clause, if a party challenges specifically the enforceability of the delegation

7    clause, the district court must consider the challenge, but if a party challenges the enforceability of

8    the arbitration agreement as a whole, the challenge is for the arbitrator. *Id.* at 71–74.

9            Like Jackson in *Rent-A-Center*, Saperstein argues that the arbitration provision Gohagan

10   seeks to enforce in the agreement between the parties is unconscionable and thus unenforceable.

11   Opp'n at 6.  Also like in *Rent-A-Center*, Saperstein fails to show that the delegation provision,

12   specifically, is unconscionable.  *See generally id*.

13           Saperstein argues that the contract is substantively unconscionable because it

14   "unequivocally lacks mutuality," focusing on the portion of the contract which states, "'Gohagan

15   may cancel a trip (or an option) for any reason whatsoever; if so, its sole responsibility is to refund

16   monies paid by the participant to it.'" *Id.* at 10 (quoting Saperstein Decl. Ex. 1 at 10).  Saperstein

17   argues that because Gohagan failed to refund his monies when it canceled the Cruise, this

18   obligation to refund monies is "illusory." *Id.*  Although Saperstein mentions the language of the

19   delegation clause, he offers no meaningful argument that the delegation clause itself is

20   substantively unconscionable. *See* Opp'n at 10–11.  Saperstein's discussion of the delegation

21   clause consists of a single conclusory statement that the delegation clause "lacks mutuality without

22   a reasonable justification" and therefore "is sufficient to find unconscionability." *Id.* (citing

23   *Saravia*, 310 F.R.D. at 421).  Saperstein fails to provide a reason why the delegation clause lacks

24   mutuality aside from his argument above, which is not specific to the delegation clause. *See id.*

25           Saperstein also argues that the place and manner provisions of the agreement requiring

26   dispute resolution in Chicago, Illinois are substantively unconscionable. *Id.* at 11.  Saperstein

27   does not address whether the place and manner provision *as applied to the delegation clause*

28   *specifically* would impose unconscionable hardship.  In any event, his argument fails even as

                                                    12

applied to the entire arbitration provision.  Saperstein asserts that courts "have found such 'place and manner restrictions' in arbitration clauses to be unconscionable 'where they impose financial hardship against the party with fewer resources, thereby effectively precluding them from litigating their claims, and where the forum selection provision has "no justification other than as a means of maximizing an advantage over the opposing party."'"  *Id.* (quoting *Arreguin v. Glob. Equity Lending, Inc.*, No. C07-06026 MHP, 2008 WL 4104340, at *8 (N.D. Cal. Sept. 2, 2008) (in turn quoting *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909, (2001))).  In *Bolter*, the court deemed a place and manner provision of an arbitration agreement unduly oppressive because it found that arbitration was not a "reasonable or affordable" option for franchisees such as the plaintiff who had limited means with which to bring an action in out-of-state arbitration.  87 Cal. App. 4th at 909.  The Ninth Circuit declined to follow *Bolter* in *Tompkins v. 23andMe, Inc.*, reasoning that "the rule in *Bolter* . . . would clearly contravene California's general policy preference for the enforcement of forum selection clauses."  840 F.3d 1016, 1029 (9th Cir. 2016) (citing *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 588 (2003); *Wimsatt v. Beverly Hills Weight Loss Clinics, Int'l, Inc.*, 32 Cal. App. 4th 1511, 1523 (1995)); *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("A court may not . . . construe [an arbitration agreement] in a manner different from that in which it otherwise construes nonarbitration agreements under state law.").

Gohagan argues that its choice to require arbitration in Chicago serves a legitimate purpose of consolidating disputes in a single forum for the company.  Def.'s Reply to Opp'n at 14 (citing Gohagan Supp. Decl. ¶ 3 (noting that the passengers who reserved tickets for the Cruise were from 30 different states and 3 foreign countries)).  The Supreme Court has held such justifications sufficient under substantially similar circumstances in *Carnival Cruise*.  *See Carnival Cruise Lines, Inc. v. Shute* 499 U.S. 585, 593–94 (1991).  In *Carnival Cruise*, the plaintiff challenged the forum selection clause on the back of a cruise ticket on the grounds that enforcement of the forum selection clause would deny them their day in court because they were financially and physically unable to pursue litigation in the defendant's chosen forum of Florida.  *Id.* at 589.  The Supreme Court enforced the forum selection clause, finding that such clauses may be enforceable even

13

United States District Court
Northern District of California

when they are not freely bargained for and that the clause was not unreasonable because Carnival had an interest in limiting the fora in which it litigated disputes since its passengers came from many different locales and because passengers likely benefitted from the reduced prices Carnival was able to offer by reducing its exposure to litigation in various fora. *Id*. at 593–94. Because Gohagan offers an identical justification for its forum selection clause as offered in *Carnival Cruise*, this Court rejects Saperstein's argument that the forum selection clause is substantively unconscionable. The Court declines to address Saperstein's arguments as to procedural unconscionability because Saperstein failed to make his necessary showing of substantive unconscionability.

As previously stated, the court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.* Saperstein had not shown that the delegation clause present in his agreement with Gohagan is unconscionable. Pursuant to the Supreme Court's ruling in *Rent-A-Center* and this Court's analysis above, a valid agreement exists between Saperstein and Gohagan at least to arbitrate gateway issues of arbitrability, which encompasses the dispute of whether the broader arbitration provision is unconscionable. Thus, the FAA requires enforcement of the delegation provision in accordance with its terms. Whether any other provision of the parties' agreement might be unconscionable is for an arbitrator to decide.

**D.    Enforcement of the Arbitration Provision Does Not Violate the *McGill* Rule**

Several California consumer protection statutes make available the remedy of a public injunction, which is defined as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). In *McGill*, the California Supreme Court considered an arbitration clause that the parties agreed "purport[ed] to preclude [the plaintiff] from seeking public injunctive relief in arbitration, in court, or in any forum," and held that the clause was "invalid and unenforceable under state law insofar as it purports to waive [the plaintiff's] statutory

14

1  right to seek such relief." *Id.* at 956, 961.  The court noted that a request for public injunctive

2  relief does not require a claim to be brought as a class or representative action, but is instead a

3  remedy available to an individual private plaintiff, so long as that plaintiff has suffered injury

4  sufficient for standing to bring a private action under California's Unfair Competition Law.  *Id.* at

5  959.  The Ninth Circuit has held that the FAA does not preempt *McGill*'s rule that arbitration

6  agreements cannot altogether preclude an award of public injunctive relief.  *Blair*, 928 F.3d at 822.

7  This Court has held that claims for public injunctive relief may be decided by an arbitrator if an

8  arbitration agreement so provides.  *Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL

9  4961802, at *9–10 (N.D. Cal. Oct. 15, 2018).

10       Saperstein argues that he has alleged violations of the Unfair Competition Law for which

11  injunctive relief is an available remedy, and his complaint thus "implicates the *McGill* rule."

12  Opp'n at 12 (quoting Cal. Bus. & Prof. Code § 17203, stating that "[a]ny person who engages, has

13  engaged, or proposes to engage in unfair competition may be enjoined in any court of competent

14  jurisdiction").  He argues that this injunctive relief is public in nature because its language is

15  consistent with an intent to prevent further harm to the public at large rather than to redress or

16  prevent injury to a particular plaintiff.  *Id.* (citing *McGill*, 2 Cal. 5th at 955).  This Court need not

17  decide whether Saperstein actually seeks public injunctive relief because Saperstein conspicuously

18  fails to argue that the arbitration provision Gohagan seeks to enforce would prevent such relief.

19  *See* Opp'n at 12–13.  The arbitration provision at issue contains no language purporting to

20  preclude public injunctive relief in any way, and Saperstein fails to argue how it would have such

21  an effect.  *See id*; Saperstein Decl. Ex. 1 at 10.  Thus, Saperstein has not shown that the agreement

22  would violate the *McGill* rule.  To the extent that Saperstein seeks public injunctive relief, an

23  arbitrator may determine whether to award such relief.

24  **IV.  CONCLUSION**

25       For the reasons discussed above, Defendant's motion to compel arbitration is GRANTED,

26  and the case is STAYED pending arbitration.  If an arbitrator determines that the arbitration

27  agreement is invalid or unenforceable, or that any aspect of Saperstein's claims should be litigated

28  in court rather than arbitrated, Saperstein may file a motion to lift the stay.  If the case proceeds in

arbitration to a complete resolution, either party may move to dismiss this action.  A status conference is set for January 29, 2021 at 2:00 PM, and the parties shall file a joint report on the status of arbitration no later than January 22, 2021.

**IT IS SO ORDERED.**

Dated: August 4, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California